# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

DANIEL J. SULLIVAN,                           )   1:11cv01833 DLB
                                              )
                    Plaintiff,                )   ORDER REGARDING PLAINTIFF'S
                                              )   SOCIAL SECURITY COMPLAINT
        vs.                                   )
                                              )
MICHAEL J. ASTRUE, Commissioner of            )
Social Security,                              )
                                              )
                    Defendant.                )
_____

## BACKGROUND

Plaintiff Daniel J. Sullivan ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff filed his application on July 14, 2004, alleging disability since April 27, 2003, due to lower back and shoulder problems, left arm pain, left hand numbness and left knee

problems.  AR 641-643, 672-680.[1]  After the application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR 580, 581, 596.  ALJ Eve Godfrey held a hearing on March 1, 2007, and issued a decision denying benefits on April 27, 2007.  AR 24-38, 1210-1248.  On August 19, 2008, the Appeals Council denied review.  AR 16-19.

Plaintiff subsequently filed an action in the United States District Court for the Central District of California.  On March 2, 2010, the Court issued an order reversing the ALJ's decision and remanding the action for further consideration of the opinions of Dennis Ainbinder, M.D., and Laurence Meltzer, M.D.  AR 1292-1299.  The Appeals Council issued an order remanding pursuant to the Court's order on April 3, 2010.  AR 1288-1299.

Pending administrative review of Plaintiff's 2004 application, Plaintiff filed a second application for disability insurance benefits on June 9, 2009, alleging disability since January 1, 2007.  AR 1313.  This application was consolidated with the 2004 application and a hearing was held on July 7, 2010.  AR 1720-1747.  On August 6, 2010, ALJ F. Keith Varney issued a decision denying benefits.  AR 1262-1277.  The Appeals Council denied review on September 9, 2011.  AR 1256-1258.

Hearing Testimony

*March 2007 Hearing*[2]

ALJ Godfrey held a hearing on March 1, 2007, in San Bernadino, California.  Plaintiff appeared with his attorney, Linh Vuong.  Vocational Expert John Kilcher appeared and testified, as did Medical Expert Arthur Brovender, M.D.  AR 1210.

---

[1] Plaintiff filed a prior application for disability insurance benefits on April 11, 2002, alleging disability since September 26, 2000, the date of a workplace accident.  He was awarded a closed period of disability from September 26, 2000, through April 24, 2003.  AR 72-74, 570-579.

[2] In his August 6, 2010, decision, ALJ Varney considered Plaintiff's testimony given at the March 1, 2007, hearing. AR 1269 .

Plaintiff testified that he lives in a house with his wife and three children.  He was 49 years old at the time of the hearing and completed high school.  AR 1215-1216.  Plaintiff last worked in July 2001 and stopped because of injuries sustained at his job in the motion picture industry.  AR 1217.  Plaintiff stated he could no longer work because of concentration problems and an inability to focus.  He also has pain in his back, knees, right shoulder and ankles.  Plaintiff doesn't sleep well and has problems with his memory.  AR 1217.

Plaintiff explained that he has withdrawn and doesn't deal with too many people anymore.  He can sit for half an hour to an hour and thought he could stand for about two hours.  Plaintiff thought that he could walk for a block or two and lift ten pounds.  AR 1218.  Plaintiff also has problems climbing stairs, bending and stooping.  He has trouble lifting with his right arm.  AR 1219.  Plaintiff spends about six to eight hours a day resting, and spends the remaining time sitting outside or trying to exercise a little.  AR 1220.

Plaintiff was currently taking pain, anxiety and sleeping medication.  AR 1221.

Dr. Brovender reviewed the medical record and explained that Plaintiff's spine and knee examinations were within normal limits.  He thought that Plaintiff could work a full day, with six to eight hours of sitting or standing, occasional bending and squatting, occasional lifting of 10 pounds and frequently lifting of 20 pounds.  Based on Plaintiff's statement that he needed shoulder surgery, Dr. Brovender limited Plaintiff to occasional overhead reaching.  AR 1227.

*July 2010 Hearing*

ALJ Varni held a hearing on July 7, 2010, in San Bernadino, California.  Plaintiff appeared with his attorney, Lawrence Rohlfing.  Vocational Expert Joseph Mooney also appeared and testified.  AR 1720.

Plaintiff first explained that his Workers' Compensation case was still pending and that he was receiving $460 every two weeks in permanent disability advances.  AR 1725.  He was living with his wife, two children and his mother in Visalia, California.  His wife was not

currently employed and the family was receiving only the Workers' Compensation payments. AR 1737.

Since the prior hearing, Plaintiff believed that his condition has worsened.  AR 1725.

He explained that the pain in his back has increased in frequency, and the pain is there all the time.  Plaintiff gets shooting pains that go through his legs and cause numbness in his toes on the right side and sometimes on the left side.  Plaintiff testified that he can't really do anything anymore because he has a hard time getting up, moving and bending.  He is in so much pain that he doesn't function well at all.  He thought that he could walk about a block and could stand for about fifteen to twenty minutes.  He can sit for about twenty to thirty minutes before needing to get up and stretch.  AR 1726-1727.  He thought he could lift about ten pounds.  AR 1737. During the day, Plaintiff is usually in bed or in his recliner because of the pain and depression. AR 1726-1727.  He also goes to the doctor and walks to the mailbox with his wife.  AR 1728. Plaintiff does not drive as much as he did in 2008.  AR 1730.

Plaintiff also believes that his depression has worsened in the past year.  AR 1732.  He doesn't sleep well at night and never wakes up refreshed.  As a result, he sleeps most of the day. AR 1793.

Plaintiff also has tingling and numbness in his fingers caused by the pain in his shoulder. AR 1735.  He drops things and has trouble writing.  AR 1736.

For the first hypothetical, the ALJ asked the VE to assume a person with Plaintiff's age, education and experience.  This person could stand for about fifteen to twenty minutes, walk a half-block slowly, sit for about twenty to thirty minutes and lift about ten pounds.  The VE testified that this person could not perform any work.  AR 1739.  If this person had to lie down all day, work would be precluded.  AR 1739.

The ALJ also set forth the residual functional capacity ("RFC") found by the prior ALJ. He asked the VE to assume a person who could lift and carry fifty pounds occasionally, twenty

pounds frequently and occasionally bend, squat and reach overhead.  This person would also be limited to simple, unskilled tasks with minimal contact with the public.  The VE testified that this person could perform the medium positions of cleaners, warehouse person and general helper. AR 1739-1741.

For the second hypothetical, the ALJ asked the VE to assume the RFC found in the prior decision granting Plaintiff a closed period of disability.[3]  This person could lift and carry twenty pounds occasionally, ten pounds frequently, stand and walk for six hours each, sit for six hours and occasionally climb, balance, stoop, kneel, bend, crouch and crawl.  This person would also be limited to simple, routine, repetitive, non-public tasks.  The VE testified that this person could perform the light positions of assembler, hand packager, table worker and machine packager. AR 1741-1742.

Plaintiff's attorney asked the VE to assume a person capable of the full range of medium exertion.  This person's ability to maintain an appropriate work pace would be reduced by twenty percent.  The VE believed that the twenty percent reduction would preclude employment.  AR 1742-1743.

If this person had a fifteen percent reduction in the capacity to perform simple and repetitive tasks, the VE testified that this person likely could not work.  AR 1743-1744.

Plaintiff's attorney also asked the VE to assume a person capable of lifting and carrying ten pounds frequently, standing and walking for two hours and sitting for four hours.  This person could never climb, stoop, kneel, crouch or crawl.  The VE indicated that this person could not work.  AR 1744-1745.

<u>Medical Record</u>

On September 26, 2000, Plaintiff sustained an avulsion fracture of the right distal fibia after a hand truck loaded with film ran over his right foot at work.  His ankle was placed in a

---

[3]  The RFC was for the period beginning April 25, 2003.  AR 575.

splint and he was given crutches and medication.  AR 168-169.  He also underwent physical therapy.  AR 169, 216.

Plaintiff underwent left knee surgery in October 2001 to repair torn ligaments.  AR 231-233.

A report dated July 5, 2002, indicated that Plaintiff's left knee had residual symptomology.  The fracture in his right ankle was healed, but had residual symptomology.  AR 392.

On October 25, 2002, Plaintiff began seeing orthopedist Dennis Ainbinder, M.D., for his left knee, right ankle and back.  AR 546.  On April 23, 2003, Plaintiff's treatment transitioned from physical therapy and chiropractic care to gym exercises.  At that time, he had a normal gait, with normal motor strength and intact sensation.  Range of motion was normal except for pain upon bending at the waist.  Plaintiff also had pain when standing on the toes on the right.  AR 513-519.

On August 13, 2003, Plaintiff saw psychiatrist Noel Lustig, M.D., upon referral from Dr. Ainbinder and in connection with his Workers' Compensation claim.  Plaintiff complained of sleeping problems, weight gain, hopelessness, memory and concentration problems and sadness. Plaintiff denied any prior psychiatric treatment.  On mental status examination, Plaintiff demonstrated difficulty in focusing and understanding that it was a forensic evaluation.  His facial expression suggested moderate anxiety and fear with slight hostility.  Plaintiff's affect was appropriate, but he demonstrated anger to a slight degree.  Plaintiff showed slight impairment in attention span and abstract thinking, but he was oriented to person, place and time.  Judgment was slightly impaired for managing daily living activities and making reasonable life decisions. Plaintiff did not demonstrate impairment in immediate recall, recent memory or remote memory. Psychological testing indicated moderate to severe depression, severe anxiety and intelligence in the low-average range.  AR 811-820.

Dr. Lustig diagnosed major depression, and noted that Plaintiff's anxiety was a function of his depression. Dr. Lustig opined that Plaintiff's depression was caused by his work-related injury, and he was currently temporarily totally disabled on a psychiatric basis. His degree of disability is moderate to severe. Plaintiff has difficulty focusing and performing his regular activities of daily living, difficulty socializing with others, is irritable and is unable to carry out instructions and perform his work tasks. Plaintiff also has difficulty with cognition and would therefore require supervision. Plaintiff was not permanent and stationary, as he just started treatment and his depression has been escalating. Dr. Lustig started Plaintiff on Effexor and Remeron for his sleep disturbance. Plaintiff was also referred for cognitive and supportive psychotherapy. AR 820-823.

From October 2003 through August 2004, Dr. Ainbinder prescribed physical therapy for Plaintiff's right shoulder. AR 787-797, 865.

On February 10, 2004, Plaintiff was evaluated by Darrell J. Burstein, M.D., for chest pain. Plaintiff's physical examination was normal, though pulmonary function tests revealed a slight restriction. Resting electrocardiogram revealed evidence of a left atrial enlargement. A chest x-ray was normal. Dr. Burnstein diagnosed probable hypertension and atypical chest pain. Dr. Burnstein believed that Plaintiff developed an emotional response to his physical injury, which aggravated and accelerated his atypical chest pain and hypertension. Plaintiff's pain, medication and weight gain also exacerbated the hypertension. AR 880-885.

Plaintiff returned to Dr. Burstein on May 6, 2004, and continued to complain of nearly constant chest pain. Plaintiff's physical examination and tests were normal. Dr. Burstein diagnosed mild labile hypertension and noncardiac chest pain. He did not believe that Plaintiff needed medication and he encouraged Plaintiff to continue exercising and watch his salt and fat intake. AR 895-897.

In September 2004, Plaintiff was diagnosed with a right inguinal hernia and umbilical hernia. They were surgically repaired in early 2006 and healed with no evidence of infection. AR 900-904, 1043, 1046-1057.

On October 8, 2004, Dr. Ainbinder completed a Medical Source Statement and opined that Plaintiff could carry less than ten pounds occasionally and frequently, stand and/or walk for at least two hours and sit for about four hours. Plaintiff would need to alternate sitting and standing every hour. Plaintiff could frequently balance, but could never climb, stoop, kneel, crouch or crawl. He could occasionally reach and frequently handle, finger and feel. Dr. Ainbinder stated that "objective and subjective factors" supported his assessment. AR 906-907.

Plaintiff saw Laurence Meltzer, M.D., on October 25, 2004, for a consultive orthopedic evaluation. Plaintiff reported that his right shoulder pain was his main problem, and that although he had low back pain, it was not particularly limiting. On examination, Plaintiff had no tenderness or spasm in his cervical spine and range of motion was normal. Plaintiff did not have pain or spasm in his thoracic spine, though range of motion was slightly limited. Straight leg raising was negative bilaterally, both in the sitting and supine positions. Plaintiff walked with a normal heel-toe gait and was able to stand on his heels and toes without difficulty. Plaintiff could perform a full deep knee bend without difficulty. Plaintiff had tenderness in the subacromial region and over the rotator cuff of the right shoulder, with marked pain with abduction and scapular fixation. Range of motion was limited in the right shoulder. The remainder of his examination was normal. Dr. Meltzer diagnosed impingement syndrome, right shoulder, with questionable rotator cuff tear and mild, chronic low back strain. Plaintiff had recovered from the right ankle fracture and knee surgery. Dr. Meltzer believed that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, and sit, stand and walk for unlimited periods. Plaintiff would need breaks to alternate sitting and standing because of his mild back problem. He could walk on uneven terrain and frequently climb, stoop, kneel

and crouch.  Plaintiff could not reach above shoulder level with the right arm and could only work at table top level with the right arm.  AR 918-923.

On October 24, 2004, Plaintiff was seen by Linda M. Smith, M.D. for a consultive psychiatric evaluation.  Plaintiff reported feeling sad, irritable, tired and withdrawn.  Plaintiff admitted not taking his prescribed medication, stating that he would rather "go natural."  On mental status examination, there appeared to be some mild psychomotor retardation.  Plaintiff appeared mostly truthful, though there was an obvious attempt to indicate that he was taking his medication.  Plaintiff described his mood as depressed and irritated.  His affect appeared solemn or dysphoric, though he was not tearful.  Plaintiff was alert and oriented and appeared to be of at least average intelligence.  Memory was intact, and insight and judgment were fair.  Dr. Smith diagnosed major depression because he "apparently has enough symptoms to warrant the diagnosis" despite his questionable reliability.  He did appear to be depressed and did fair in the mental status examination.  Dr. Smith did not believe that his depression was serious, however, and noted that Plaintiff would likely improve if he took his medication.  Plaintiff was mildly to moderately impaired in mental functioning.  Specifically, he was mildly impaired in his ability to understand, remember and carry out simple instructions, and was mildly to moderately impaired in his ability to understand, remember and carry out detailed instructions, to interact appropriately with co-workers and the public, to comply with job rules and attendance, to respond to changes in the work setting, and to maintain persistence and pace.  AR 911-916.

On October 27, 2004, a State Agency physician completed a Physical Residual Functional Capacity Assessment and opined that Plaintiff could lift twenty pounds occasionally, ten pounds frequently, stand and/or walk for six hours, sit for six hours and occasionally climb, balance, stoop, kneel, crouch and crawl.  AR 926-935.

On November 2, 2004, Plaintiff saw Agreed Medical Examiner Thomas E. Preston, M.D. He reported "a lot" of anxiety, depression and irritability.  Plaintiff reported taking all of his

medications.  On mental status examination, he appeared to sit without any pain behaviors during the interview, though he did favor his right arm.  During the first part of the day, he appeared slightly slowed down, but otherwise alert and focused.  In the afternoon, he became fatigued and had difficulty focusing and concentrating.  His affect was muted and unavailable to him, and his mood was depressed.  Thought content was sparse with a sense of frustration at his pain and inability to work, as well as preoccupation with his chest pain and anxiety.  His judgment was impaired by his anxiety and depression, and his insight was poor.  Psychological testing revealed significant depression and anxiety, poor concentration and an inability to make decisions.  AR 936-946.

Dr. Preston diagnosed anxiety disorder, not otherwise specified, with panic attacks, and depressive disorder, not otherwise specified.  Dr. Preston believed that Plaintiff's Effexor should be changed because of its impact on blood pressure.  Plaintiff would have slight to moderate impairments in all mental work functions.  He did not believe that Plaintiff was permanent and stationary because he remained anxious, fearful, withdrawn, irritable and unable to cope.  Plaintiff was temporarily disabled on a combined orthopedic and psychiatric basis.  AR 946-951.

Plaintiff returned to Dr. Lustig on November 17, 2004.  He noted that Dr. Preston disagreed with the low dose of Effexor.  Plaintiff was angry because he felt like he had been mistreated.  Plaintiff appeared less depressed, but more irritable.  On mental status examination, his facial expression suggested anxiety, sadness and hostility.  His affect was appropriate and attention and abstract thinking were impaired.  Plaintiff was oriented to person, place and time and he had no impairment in immediate recall, recent memory or remote memory.  Psychological testing revealed severe depression and severe anxiety.  Dr. Lustig diagnosed major depression in partial remission, and some narcissistic traits.  He noted that he did not agree with the suggestion that Effexor was inappropriate, though as a "courtesy," he changed Plaintiff's medication.  Plaintiff continued to be temporarily totally disabled.  AR 841-844.

On November 24, 2004, State Agency physician K.J. Loomis completed a Mental Functional Capacity Assessment. Dr. Loomis opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions. He could follow basic instructions, sustain concentration and persistence for basic tasks, interact appropriately with others and adapt to work settings. Because Plaintiff had some difficulty interacting with others, Dr. Loomis believed that Plaintiff could perform non-public simple, repetitive tasks. AR 952-954. This opinion was affirmed in March 2005. AR 994.

In January 2005, Dr. Ainbinder examined Plaintiff and found tenderness in the right shoulder and pain on reduced range of motion. Plaintiff also had tenderness to the midline of the lumbosacral spine, and reduced range of motion. Plaintiff had pain on terminal flexion of his knees bilaterally. He diagnosed MRI evidence of acromioclavicular arthrosis of the right shoulder, a resolved right ankle sprain, lumbar myofascial sprain with disc protrusion at L2-3, L3-4 and L5-S1, status post left knee surgery, psychiatric diagnoses per Dr. Lustig, resolved contusion of the right knee and probable hypertension and atypical chest pain per Dr. Burstein. Dr. Ainbinder requested permission to perform right shoulder surgery and indicated that Plaintiff continued to show improvement. Plaintiff remained temporarily totally disabled. AR 959-968.

Plaintiff returned to Dr. Burstein on February 17, 2005. Plaintiff had gained weight, his pressure was up and down, he was not exercising as much and he continued to have persistent chest pain with stress. Plaintiff's activity was limited by pain symptoms. Pulmonary function tests were normal and a resting electrocardiogram was normal. He diagnosed mild labile hypertension, noncardiac chest pain, right inguinal hernia, umbilical hernia and weight gain by history. Dr. Burstein ordered further testing and encouraged Plaintiff to exercise and watch his diet. His blood pressure needed to be treated so that Plaintiff could participate in therapy required to treat his industrial injuries. AR 985-991.

Dr. Ainbinder saw Plaintiff again on March 3, 2005.  His examination was unchanged.  The diagnoses also remained the same, with the additional diagnosis of a hernia developed while using crutches post knee surgery.  The insurance company denied permission for shoulder surgery and Dr. Ainbinder recommended that Plaintiff be re-evaluated by an Agreed Medical Evaluator.  Plaintiff was permanently partially disabled.  AR 970-979.

Plaintiff was reevaluated by Dr. Lustig on March 16, 2005.  Dr. Lustig called Plaintiff because he was not feeling well and had too much back pain to come into the office.  Plaintiff was having trouble obtaining his prescriptions because of financial issues.  He did not sound as secluded.[4]  Dr. Lustig diagnosed major depression in partial remission, and some narcissistic traits, and started Plaintiff on Zoloft.  AR 997-1000.

Plaintiff returned to Dr. Ainbinder on April 21, 2005.  He had fallen on his right ankle four days earlier when his right leg gave way.  Plaintiff complained of right knee and ankle pain and swelling.  Dr. Ainbinder ordered an MRI and provided Plaintiff with crutches and an air cast.  AR 980-983.

A May 10, 2005, MRI of Plaintiff's right ankle revealed a nondisplaced fracture of the talus and anterior talofibular ligamentous tear.  AR 1007.

Plaintiff returned to Dr. Burnstein on May 12, 2005.  Based on his examination and cardiac testing, he diagnosed mild labile hypertension and noncardiac chest pain.  He believed that Plaintiff's blood pressure should be managed non-pharmacologically.  AR 1037-1041.

Plaintiff underwent an MRI of the right knee on June 7, 2005.  The test revealed a mild amount of fluid on the knee joint, a grade 3 tear in the posterior horn of the medial meniscus and chondromalacia patellae.  AR 1009.

---

[4] The progress report also includes notes regarding Plaintiff's appearance, posture, facial expressions and general body movements.  However, Plaintiff was not in the office and it is unclear where Dr. Lustig made these observations.  AR 993.

Plaintiff saw Dr. Ainbinder again on June 13, 2005.  Plaintiff was still using crutches and continued to complain of constant low back pain, intermittent right shoulder pain, right ankle pain, aggravated left knee pain and right knee pain.  He had positive impingement sign in the right shoulder with tenderness, tenderness in the lower back and pain on extension, pain in the right knee with pain on flexion and pain in the right ankle with pain on flexion and extension.  Except for forward flexion of the lumbar spine, range of motion testing was within normal limits in all joints.  Sensation was intact in the upper and lower extremities.  Plaintiff had a normal gait and was able to stand on his heels and toes without difficulty.  He diagnosed acromioclavicular arthrosis of the right shoulder, right ankle sprain with fracture of the talus, lumbar myofacial sprain with disc bulge of 3-4 mm at L3-L4, 2 mm at L5-S1, and 2 mm at L2-L3, status post reconstructive surgery of the left knee and a torn medial meniscus right knee.  Plaintiff was instructed to continue on crutches for the next three weeks.  Plaintiff continued to show improvement with therapy.  AR 1085-1094.

Dr. Lustig examined Plaintiff on June 15, 2005.  Plaintiff exhibited slightly impaired attention span and abstract thinking, and he was moderately disoriented to person, place and time.  Judgment and memory were not impaired.  Dr. Lustig diagnosed major depression, exacerbated due to current setback with ankle fracture and indebtedness of house.  AR 1153-1157.

On August 24, 2005, Plaintiff returned to Dr. Lustig.  He exhibited slightly impaired abstract thinking, though judgment and memory were not impaired.  Dr. Lustig diagnosed major depression and changed Plaintiff's medications.  Dr. Lustig also instructed Plaintiff to continue with psychotherapy and join a group session.  Dr. Lustig indicated that vocational rehabilitation could begin.  AR 1147-1152.

Plaintiff returned to Dr. Lustig on October 12, 2005.  He reported that he was "threatening of thinking of hurting himself" because he was tired of waiting for his surgeries.

Plaintiff did not have any impairment in attention, judgment or memory.  Dr. Lustig diagnosed major depression, with agitation.  His medications were changed and he was instructed to continue his psychotherapy.  AR 1141-1146.

Dr. Ainbinder saw Plaintiff for a reevaluation on January 5, 2006.  Since the last examination, Plaintiff's knee gave out on him and he sustained a mallet finger deformity of the left small finger.  His examination was unchanged, though Plaintiff was wearing an aluminum splint on his left small finger.   Dr. Ainbinder diagnosed impingement syndrome of the right shoulder with arthrosis of the acromioclavicular joint, right ankle sprain with fracture of the talus, lumbar myofacial sprain with disc bulge of 3-4 mm at L3-L4, 2 mm at L5-S1, and 2 mm at L2-L3, status post reconstructive surgery of the left knee, torn medial meniscus right knee, and mallet deformity left small finger.  He believed that Plaintiff would need surgery on the right knee and right shoulder.  AR 1066-1069.

Plaintiff saw Dr. Lustig on February 8, 2006.  Plaintiff's body language exhibited anxiety and his facial expressions suggested slight anxiety and sadness.  Plaintiff's attention, concentration and memory were not impaired, though his judgment was still slightly impaired for managing activities of daily living and for making reasonable life decisions.  Psychological testing revealed severe depression and anxiety.  Dr. Lustig diagnosed major depression in partial remission, and noted that Plaintiff had considerably improved since he was first seen.  Plaintiff also had a sleep disturbance, as physical pain kept him awake at night, causing fatigue and trouble concentrating during the day.  Plaintiff felt that he could be retrained to do something else in the movie industry.  Dr. Lustig considered him permanent and stationary, with a need for future care.  He had mild to marked limitations in mental functioning, with an overall moderate permanent impairment.  Dr. Lustig opined that Plaintiff needed a job where he could be left alone to do his work.  He would also need a 30 minute break in the morning and afternoon, in addition to an appropriate lunch break.  Plaintiff should not work in the evenings or at night, as

this would exacerbate his sleep disturbance.  Dr. Lustig believed that vocational rehabilitation was indicated, though he may have some difficulty because of his psychiatric impairments.  He would probably be able to be retrained in the technical aspects of the movie or video industry. AR 1126-1139.

On May 11, 2006, Plaintiff saw Simon Lavi, M.D., for an orthopedic consultation of the right shoulder.  Examination revealed a fair amount of discomfort to palpation and a positive grind test.  Dr. Lavi diagnosed right shoulder impingement syndrome with acromioclavicular arthrosis.   AR 1162.

Plaintiff's hernias were repaired in February 2006 and April 2006.  AR 1042, 1046-1052. On July 25, 2006, Joseph Yadegar, M.D., opined that Plaintiff was permanent and stationary with respect to the hernia repairs.  AR 1043.

On July 26, 2006, Plaintiff returned to Dr. Lustig, who noted that Plaintiff was doing considerably better.  His depression had improved considerably and he was in partial remission. Plaintiff's affect was appropriate, though he exhibited moderate anxiety and sadness.  Judgment was slightly impaired for making reasonable life decisions and he did not exhibit any impairment in memory.  Dr. Lustig diagnosed major depression, in partial remission, and a sleep disturbance. He was instructed to continue with his medication and to continue seeing his therapist.  Dr. Lustig also referred Plaintiff to a sleep lab.  AR 1119-1122.

Plaintiff returned to Dr. Lustig on September 27, 2006.  On mental status examination, Plaintiff's facial expression suggested anxiety, fear, apprehension, depression and sadness.  His abstract thinking was slightly impaired, and judgment was slightly impaired for managing daily living activities of making reasonable life decisions.  Immediate recall, recent memory and remote memory were intact.  Testing revealed a severe amount of anxiety and depression.  Dr. Lustig diagnosed major depression, though he noted that Plaintiff had improved considerably. He still has some trouble with memory, but that had also improved.  Plaintiff was still having

trouble with sleep, but a medication change had helped with nervousness and anxiety.  Plaintiff also had some narcissistic personality traits, though they did not rise to the level of a disorder.  Dr. Lustig believed that Plaintiff was permanent and stationary on a psychiatric basis.  Plaintiff was moderately to extremely limited in mental functioning, and had an overall marked permanent impairment.  Dr. Lustig did not believe that Plaintiff could return to work and was 100 percent disabled as a combination of his orthopedic and psychiatric problems.  Although Plaintiff thought he could be retrained, Dr. Lustig did not think that vocational rehabilitation was possible.  AR 1102-1115.

Plaintiff saw Dr. Lavi again on September 28, 2006.  Examination revealed discomfort to palpation in the right shoulder, with normal range of motion.  Impingement sign was positive.  Plaintiff had discomfort on palpation of the right knee and lumbar spine, with pain on range of motion.  He diagnosed internal derangement of the right knee, impingement syndrome with acromioclavicular arthrosis of the right shoulder and lumbar discopathy/facet arthropathy.  Dr. Lavi told Plaintiff he would perform shoulder surgery as soon as he obtained authorization.  AR 1158-1161.

Plaintiff was seen in the emergency room in January 2007 for chest pain.  A chest x-ray was normal and he was diagnosed with nonspecific chest pain.  AR 1185-1195.  A few days later, he returned to the emergency room after he blacked out.  A CT scan of the head was normal.  He was diagnosed with anxiety and panic attacks and discharged with medication.  AR 1173-1184.

On February 26, 2007, Plaintiff saw Sean Leoni, M.D., for cardiac evaluation.  Plaintiff reported that he stopped his anxiety medications suddenly under the care of Dr. Lustig and complained of chest pain and palpitations.  Examination revealed elevated blood pressure and partial blockage of the carotid artery.  Dr. Leoni diagnosed anxiety attacks, brought on secondary to hypertension.  Stopping the medication suddenly caused the palpations and elevated blood

pressure.  Plaintiff was given a prescription for Xanax and instructed not to stop it suddenly.  AR 1338-1340.

Plaintiff returned to Dr. Lustig on March 21, 2007, and reported that he was not doing well.  Plaintiff complained of pain on the left side of his head and reported that he had stopped taking all of his medications previously prescribed by Dr. Lustig, but was taking Xanax from the emergency room visit.  Dr. Lustig noted the problems Plaintiff has had with various medications and felt that he did best on Zoloft.  Plaintiff's surgery had been postponed because of marked anxiety, and Dr. Lustig believed that he'd be ready for surgery in one to two months.  Dr. Lustig also noted that the CT scan of his head was normal and that there was no organic basis for his complaints of seeing and hearing things.  His mental status examination remained essentially the same and his diagnoses were unchanged.  Plaintiff was permanent and stationary.  He ordered Plaintiff to increase his Zoloft and Ambien.  AR 1398-1402.

Plaintiff returned to Dr. Lavi on May 30, 2007.  Plaintiff was not surgically cleared for right shoulder surgery secondary to a medical condition and needed further testing.  AR 1705-1707.

A June 25, 2007, MRI of the thoracic spine revealed numerous disc bulges.  An MRI of the lumbar spine also revealed broad-based asymmetric posterior disc protrusion at L2-3.  AR 1700-1702.

Plaintiff saw Dr. Lustig on June 26, 2007.  Plaintiff reported that he thought his medications, Zoloft and Xanax, caused him to have a stroke.  Dr. Lustig said that was not likely.  Although Dr. Lustig had considered Plaintiff permanent and stationary, he was placed back on temporary total disability because he became depressed.  Although he was not permanent and stationary, Dr. Lustig believed that Plaintiff needed to begin retraining in order to have a sense of future and hope.  After an examination, Dr. Lustig diagnosed major depression and renewed

Plaintiff's medications.  He wanted Plaintiff to see Dr. Leoni for his neck issues before he prescribed Xanax.  AR 1393-1397.

From July 2007 through November 2007, Plaintiff continued his psychotherapy.  AR 1446-1450.

Plaintiff returned to Dr. Lavi on July 2, 2007.  Plaintiff continued to wait for clearance for the right shoulder surgery.  No medication was given as Plaintiff should have had plenty left from the prior visits.  AR 1700-1704.

Plaintiff underwent electrodiagnostic testing of the bilateral lower extremities on July 11, 2007.  The testing did not reveal evidence of neuropathy.  AR 1342-1347.

Plaintiff saw Dr. Lavi on August 2, 2007.  Dr. Lavi gave Plaintiff medication pursuant to his request and prescribed back rest and eight sessions of chiropractic treatments.  AR 1694-1699.

On September 27, 2007, Plaintiff saw neurologist Han H. Merman, M.D., for complaints of numbness on the left side of his face, hearing loss in the left ear and lightheadedness.  There was decreased sensation to pinprick and fine touch over the first, second and third divisions of the fifth cranial nerve, as well as decreased sensation to vibration over the skull.  Dr. Merman diagnosed tension headache disorder and noted that his physical examination was essentially normal except for sensory loss on the left side of his face and in the right thigh area.  He ordered an MRI scan of Plaintiff's brain.  AR 1510-1517.

Plaintiff returned to Dr. Lavi on October 10, 2007.  Plaintiff was awaiting clearance for right shoulder surgery and his examination was unchanged.  Dr. Lavi noted that Plaintiff continued to be treated conservatively and no medication was dispensed.  AR 1690-1694.

On October 15, 2007, Plaintiff underwent an otolaryngology evaluation performed by Paul Goodman, M.D.  His physical examination was normal.  Audiometric evaluation revealed a bilateral sensorineural hearing loss, greater on the left side.  Otoacustic emissions revealed hair

cell damage in the left ear.  Dr. Goodman concluded that Plaintiff had mildly asymmetric sensorineural hearing loss.  As the MRI was normal, Dr. Goodman felt that no treatment was needed and that the issue may resolve with time.  AR 1538-1546.

On October 20, 2007, Plaintiff returned to Dr. Merman.  There was decreased sensation over the left side of the face with a positive accelerated Romberg falling to either side.  Muscle bulk, tone and strength were normal.  He diagnosed tension disorder and sensory loss on the left side, etiology unclear.  The MRI showed no evidence of a brainstem infarction.  The sensory loss could still be related to a migraine headache syndrome, but it was not serious.  AR 1507-1508.

Plaintiff returned to Dr. Merman on November 20, 2007.  He reported an occasional headache and continued numbness on the left side of his face, though it did not interfere with activities of daily living.  His neurological examination and diagnoses were unchanged.  Dr. Merman discharged Plaintiff and told him to return if his headaches get worse.  Plaintiff had no neurological impairment.  AR 1504-1506.

Plaintiff saw Dr. Lavi on January 9, 2008.  He continued to complain of persistent pain in the right shoulder and knee.  Examination of the right shoulder revealed discomfort with positive impingement sign.  Plaintiff's cervical spine revealed some reproducible pain in the C5 and slight C6 dermatomes in the right upper extremity.  The right knee showed some discomfort with a somewhat positive grind test.  Dr. Lavi diagnosed impingement syndrome, right shoulder, lumbar discopathy/facet arthropathy and internal derangement, right knee.  Dr. Lavi explained to Plaintiff that due to the numerous purported conditions and the lack of medical clearance, Plaintiff should attempt to live with his symptomology as best he can and forego all surgeries.  Plaintiff was not given medications and was told to use a topical analgesic cream for relief.  AR 1678-1681.

Plaintiff returned to Dr. Lustig on January 29, 2008.  He indicated that Plaintiff had not followed through with psych testing.  Plaintiff reported a significant increase in pain.  Dr. Lustig

noted that Plaintiff had improved, but at a slower pace than Dr. Lustig would have liked. "His depression is worse, but his pain is better and he can handle this increase in pain with only a slight increase in depression." Test results suggested a severe amount of depression, anxiety and hopelessness. Plaintiff's abstract thinking and judgment for making reasonable life decisions were slightly impaired. Memory was not impaired. Dr. Lustig diagnosed major depression in partial remission, though it is getting worse as his pain increases, sleep disturbance improved with medication, and pain disorder. Plaintiff was ordered to continue medication and therapy. Dr. Lustig also believed that Plaintiff may need a nurse case manager to schedule appointments as it has become too difficult for Plaintiff and his wife to do so. Dr. Lustig believed that Plaintiff was completely disabled as he could think of no work restriction that would allow him to work. AR 1387-1392.

Electrodiagnostic testing of the bilateral lower and upper extremities performed on February 13, 2008, revealed moderate right and mild left carpal tunnel syndrome. AR 1348-1355.

Plaintiff saw Dr. Lavi on March 26, 2008. His examination had not changed significantly. Plaintiff was not medically cleared for surgery and was instructed to continue chiropractic treatment. The overall outcome depended on Plaintiff's response to therapy. AR 1673-1677.

On July 8, 2008, Plaintiff saw Chester Hasday, M.D., for an Agreed Medical Re-examination. He reported that his back was worse and that he had increased numbness in the lower extremities. On examination, Plaintiff had pain and decreased range of motion in the cervical and lumber spine, shoulders, knees and ankles. Impingement sign was positive on the right shoulder. Plaintiff's gait was normal and he walked on his heels and toes without difficulty. Plaintiff had decreased sensation in the anterolateral aspect of the left knee. Dr. Hasday noted that Plaintiff did not make full effort on lumbar strength testing and therefore due

to sub-maximal effort, there was no objective evidence of strength loss.  Dr. Hasday diagnosed impingement syndrome, right shoulder, chronic recurrent musculoligamentous injury, lumbosacral spine, degenerative disc disease, lumbosacral spine, multi-level, L2-5, status post left knee surgery, with residuals, probable tear, medial meniscus, right knee, status post healed avulsion fracture, right ankle, with mild residuals, status post non-displaced fracture, right talus, healed, status post repair, right inguinal and umbilical hernias, healed.  Dr. Hasday imposed a preclusion from repetitive activities at or above shoulder level with the right shoulder, and a preclusion from heavy lifting, repetitive bending, stooping, squatting, kneeling, climbing, pivoting, running or jumping.  Orthopedically, Plaintiff may be able to participate in work, though Dr. Hasday noted that there were underlying factors that may preclude his successful participation in a vocational rehabilitation program at present.  AR 1591-1622.

Plaintiff saw Dr. Lavi in July 2008, and he was prescribed a short course of physical therapy and limited pain medication.  AR 1664.

Plaintiff returned to Dr. Lavi on November 5, 2008.  There was swelling in Plaintiff's left knee, along with effusion and positive grind test.  Plaintiff had some discomfort in the right knee.  Examination of the lumbar spine and right shoulder had not changed significantly.  Dr. Lavi gave Plaintiff medication for inflammation and pain.  Plaintiff was permanently partially disabled.  AR 1647-1650.

On January 22, 2009, Plaintiff returned to Dr. Preston for an Agreed Medical Reevaluation.  Plaintiff reported that he is still depressed and is tired with no energy.  He also complained of anxiety, irritability, dizziness and difficulty concentrating.   On mental status examination, Plaintiff did not exhibit significant pain behaviors even though he complained of pain.  Plaintiff was alert, though at times he appeared distracted.  His mood was moderately depressed and he was preoccupied with the thought that his medication change two years ago caused many of his current difficulties.  Plaintiff denied hallucinations but reported hearing odd

noises on the left side that sounded like scratching or sizzling.  Plaintiff was oriented and able to subtract serial 3s, able to recall three objects after six minutes, able to name various objects and able to write a sentence.  Dr. Preston did not find significant neuropsychological cognitive impairment on testing.  Plaintiff tested as markedly depressed, anxious and socially withdrawn. Plaintiff's test-taking approach was straightforward and without exaggeration.  AR 1356-1369.

Dr. Preston diagnosed generalized anxiety disorder with panic attacks, major depressive disorder, mild to moderate and undifferentiated somatoform disorder with complaints of left-sided numbness, pain, tingling and hearing loss.  Since Dr. Preston last saw Plaintiff, his condition had worsened.  His complaints relating to facial numbness and odd sensations in his head did not appear to be fully related to his mental impairments and Dr. Preston did not find evidence that Plaintiff was intentionally producing these symptoms.  Dr. Preston believed that further neuropsychological testing was necessary to rule out a possible small cerebrovascular incident.  Assuming Plaintiff did not undergo additional surgery, Dr. Preston believed he was probably permanent and stationary from a psychiatric perspective.  Plaintiff had a slight to moderate impairment in his ability to comprehend and follow instructions, and in his ability to perform simple and repetitive tasks, a moderate impairment in his ability to maintain an appropriate pace, and a moderate impairment in his ability to perform complex tasks.  He also had a slight to moderate impairment in his ability to relate to others and receive instruction, and in his ability to influence people.  He had a moderate impairment in his ability to make decisions without immediate supervision, and in his ability to accept and carry out responsibilities for direction, control and planning.  Plaintiff would need further treatment and would probably be unable to return to his former occupation.  AR 1369-1374.

Plaintiff returned to Dr. Lustig on May 26, 2009.  Plaintiff reported that his pain was more significant and that he had a mini-stroke.  Plaintiff was doing better and his medications seemed to be helping, but he was not as improved as Dr. Lustig thought he might have been.

Test results suggested that Plaintiff was experiencing extreme depression, moderate anxiety and extreme hopelessness. Plaintiff's behavior and moderately decreased body movements suggested anxiety, depression, sadness, slight anger and hostility. Abstract thinking and judgment were moderately impaired, but memory was normal. Dr. Lustig ordered Plaintiff to continue his medications and psychotherapy, and ordered neuropsychological testing due to a possible small stroke. Plaintiff was permanent and stationary. AR 1382-1386.

In a Psychiatric Review Technique Form dated November 30, 2009, State Agency physician P. M. Balson, M.D., opined that Plaintiff had mild restrictions in activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace. AR 148-1493. In a Mental Residual Functional Capacity Assessment completed the same day, Dr. Balson opined that Plaintiff was moderately limited in his ability to understand, remember and carry out detailed instructions and in his ability to interact appropriately with the general public. Plaintiff could understand and perform simple, repetitive tasks, maintain pace, persistence and concentration, relate to co-workers, supervisors and the general public, and adapt to routine changes. AR 1493-1495.

In March 2010, State Agency physician R. E. Brooks, M.D., reviewed the recent evidence in the record and opined that the prior mental RFC assessment should be adopted. AR 1375-1376.

Plaintiff returned to Dr. Lavi on April 28, 2010. Examination of his right shoulder and bilateral knees was unchanged. Examination of the lumbar spine revealed tenderness and reproducible pain in the lower extremities. Dr. Lavi did not believe that invasive procedures were warranted and Plaintiff was advised to lose some weight and strengthen his abdominal column musculature to compensate for low back pain. Plaintiff did have classic symptomology of disc herniations and Dr. Lavi would not rule out future invasive procedures such as injections and/or surgery. Absent further care, Dr. Lavi believed that Plaintiff's condition has plateaued

and he could be considered permanent and stationary with the factors of disability set forth by Dr. Hasday.  AR 1624-1628.

<u>Prior ALJ's Findings</u>

In her 2007 decision, ALJ Godfrey found that Plaintiff had the severe impairments of depression and status post knee and shoulder surgery.  AR 29.  She determined that Plaintiff retained the RFC to lift and carry fifty pounds occasionally, twenty pounds frequently, and occasionally bend, squat and reach overhead.  Plaintiff was limited to simple, unskilled tasks with minimal contact with others, including the public.  AR 30.  With this RFC, the ALJ determined that Plaintiff could perform the positions of kitchen helper, equipment cleaner, hand packer, hand packer nuts and bolts, and small product assembler.  AR 38.

In so finding, the ALJ rejected Dr. Lustig's September 26, 2007, opinion that Plaintiff was disabled and could not return to work.  The ALJ rejected the opinion because (1) it was an issue reserved for the Commissioner; (2) the limitations were inconsistent with the limitations set forth in his February 8, 2006, report; and (3) the conclusions were not supported by the totality of the medical evidence or his own progress notes.  AR 35.  The ALJ adopted the opinion of the State Agency physician with respect to Plaintiff's mental limitations.

The ALJ also rejected the June 13, 2005, opinion of Dr. Ainbinder, finding that (1) his opinions were not well supported because the extreme limitations were not backed by citations to medical signs and laboratory results; (2) his conclusions were inconsistent with the totality of the record; and (3) Dr. Brovender testified that the report was essentially normal.  AR 36.

<u>District Court's Order Remanding for Further Proceedings</u>

In its March 2010 decision, the Court concluded that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Ainbinder's opinion.  The ALJ only considered Dr. Ainbinder's June 13, 2005, progress note, and did not mention the other reports.  The ALJ also failed to specify what medical records were inconsistent with Dr. Ainbinder's conclusions, and

in fact, Dr. Meltzer's October 25, 2004, orthopedic evaluation supported the opinion.  The ALJ

also erred by not citing to evidence supportive of Dr. Brovender's testimony, making it improper

to rely on his opinion to reject the opinion of Dr. Ainbinder.  AR 1297-1299

Plaintiff also argued that the ALJ erred in rejecting the opinions of Dr. Meltzer and Dr.

Lustig, and in discounting his testimony.  The Court did not reach these issues because it

remanded based on Plaintiff's first claim or error.  AR 1293.

Current ALJ's Findings

ALJ Varni found that Plaintiff had the severe impairments of depression and status post

knee and shoulder surgery.  AR 1267.  Despite these impairments, Plaintiff retained the RFC to

lift and carry fifty pounds occasionally, twenty pounds frequently, and occasionally bend, squat

and reach overhead.  Plaintiff was limited to simple, unskilled tasks with minimal contact with

others, including the public.  AR 1269.  The ALJ concluded that with this RFC, Plaintiff could

perform the jobs of cleaner, warehouse worker and general helper.  AR 1275.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision

to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

the Court must determine whether the decision of the Commissioner is supported by substantial

evidence.  42 U.S.C. 405 (g).  Substantial evidence means "more than a mere scintilla,"

*Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

*Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

401.  The record as a whole must be considered, weighing both the evidence that supports and

the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler*, 760 F.2d 993,

995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c (a)(3)(A).  A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability and (2) has an impairment or a combination of impairments that is considered "severe" (depression and status post knee and shoulder surgery) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) did not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) could not perform his past relevant work, but (5) could perform a significant number of jobs in the national economy.  AR 181267-1276.

Here, Plaintiff argues that the ALJ (1) erred in considering the opinions of Dr. Ainbinder, Dr. Meltzer, Dr. Hasday and Dr. Lustig; and (2) improperly rejected his subjective testimony.

### DISCUSSION

A.   <u>Analysis of Medical Evidence</u>

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians).  As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir.2007); *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).  At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir.1991).  Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir.1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir.1984).  As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician.  *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir.1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician.  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of

a nonexamining medical advisor.  *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995).  For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...."  *Magallanes*, 881 F.2d at 752 (emphasis in original).  Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion.  *Id*. at 751-52.

After examining the medical evidence, ALJ Varni set forth the same RFC as the prior ALJ.  Plaintiff could lift and carry fifty pounds occasionally, twenty pounds frequently, and occasionally bend, squat and reach overhead.  He was limited to simple, unskilled tasks with minimal contact with others, including the public.  AR 1269.

1.    *Plaintiff's Physical RFC*

In formulating the physical RFC, the ALJ gave "great weight" to the 2007 testimony of Medical Expert Dr. Brovender and "significant weight" to the 2008 opinion of examining physician Dr. Hasday.  AR 1273.  The ALJ also gave "some weight, but not full weight" to the opinions of examining physician Dr. Meltzer and the State Agency physician.  AR 1273.  The ALJ did not give any weight to the opinion of Plaintiff's treating physician, Dr. Ainbinder.  AR 1273.

Plaintiff contends that the ALJ (1) failed to set forth specific and legitimate reasons for rejecting Dr. Ainbinder's October 8, 2004, opinion; (2) erred in rejecting Dr. Meltzer's opinion; and (3) erred in analyzing Dr. Hasday's opinion.

Initially, the Court notes that the ALJ erred in questioning the opinions of Dr. Ainbinder, Dr. Lavi, Dr. Hasday, Dr. Lustig and Dr. Preston insofar as they were rendered in the context of a workers' compensation action.  According to the ALJ, "[m]edical reports generated in the

context of a workers' compensation claim are adversarial in nature," and the physicians retained by either party are "often biased and do not provide truly objective opinions." The ALJ noted that a treating physician in this context "often serves as an advocate for the claimant and describes excessive limitations to enhance the claimant's financial recovery." The ALJ also found it "astounding" that the workers' compensation case has been ongoing for ten years after the injury, and believed that the physicians involved "have accrued a real financial interest in the matter. . ." AR 1272. The ALJ concluded that the physicians' opinions "must be considered in light of the litigation which was still on going, and for which their reports were prepared." AR 1272.

Plaintiff contends, and the Court agrees, that the ALJ is not entitled to reject an opinion based "on the purpose for which medical reports are obtained." *Batson v. Comm'r*, 359 F.3d 1190, 1196, n. 5 (9th Cir. 2004) (citing *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995)). "[T]he ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings." *Booth v. Barnhart*, 181 F.Supp.2d 1099, 1105 (C.D.Cal. 2002).

Therefore, the ALJ's questioning of the motives of the physicians, as well as his critique of the workers' compensation system, are improper and do not constitute legitimate reasons for rejecting *any* medical opinions.

Plaintiff next attempts to assign error based on the ALJ's explanation that the term "temporarily totally disabled" has little probative value regarding the issue of disability under the Social Security Act because it is an issue reserved for the Commissioner. AR 1272. Plaintiff agrees that this is a term of art used in workers' compensation proceedings, but contends that the ALJ "must translate those terms out of the forum in which they arose and into the parlance of the Social Security disability adjudication." Opening Brief, at 31. In support, Plaintiff cites *Desrosiers v. Sec'y Health and Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988), but *Desrosiers*

does not set forth any such requirement.  Instead, *Desrosiers* explains that an ALJ erred when he failed to acknowledge the distinction between the measurements of categories in the workers' compensation scheme and those in the Social Security analysis.  An opinion that a claimant is "disabled" to any extent, whether set forth in terms of workers' compensation law or Social Security law, is an issue reserved for the Commissioner.

Nonetheless, *Desrosiers* instructs the Court in reviewing the ALJ's analysis of Dr. Hasday's opinion.  The ALJ determined that Plaintiff could lift fifty pounds frequently and twenty pounds occasionally.  However, every physician who specified an amount of weight found that Plaintiff could lift twenty pounds or less frequently, and ten pounds occasionally.  AR 906, 918, 926.  Even Dr. Brovender, whose opinion the ALJ found controlling, believed that Plaintiff could only lift twenty pounds occasionally and ten pounds frequently.  AR 1227.  Instead, the ALJ found support for his conclusion that Plaintiff could perform medium work in Dr. Hasday's opinion.  The ALJ states, "[w]ork at the medium exertional level does not require heavy lifting. . ."  AR 1273.

Dr. Hasday's conclusion that Plaintiff could not perform heavy work in the workers' compensation context does not, however, translate into an affirmative finding that Plaintiff could lift fifty pounds occasionally given the overwhelming evidence to the contrary.  As in *Desrosiers*, it appears that the ALJ failed to recognize that a distinction exists between "heavy lifting" in the workers' compensation context and "heavy lifting" in the Social Security context.  In workers' compensation terms, an individual who is precluded from heavy lifting has lost approximately half of his pre-injury capacity for lifting.  *See Macri v. Chater*, 93 F.3d 540, 543-544 (9th Cir. 1996).  The ALJ made no effort to translate "heavy lifting" and his conclusory statement that "[w]ork at the medium exertional level does not require heavy lifting" as found by Dr. Hasday is insufficient.

Elsewhere in the opinion, the ALJ explains that Plaintiff's past work, as performed, was heavy-level work.  AR 1274.  During the 2010 hearing, the VE noted that Plaintiff lifted and carried "70 to 100 pounds and sometimes more than that."  AR 1738.  Dr. Hasday's preclusion from heavy work therefore meant that Plaintiff could now lift somewhere between thirty-five and fifty pounds.  While this matches the fifty pound upper limit found by the ALJ, his failure to translate and explain the difference leaves his finding unsupported.  In other words, it *could* be a reasonable inference that where Plaintiff could lift seventy to 100 pounds before his injury, his preclusion from heavy lifting would mean he could now lift fifty pounds, consistent with medium work.  However, in light of the overwhelming evidence to the contrary, the Court cannot conclude that it was a reasonable inference without explanation from the ALJ.  Moreover, given that the majority of the medical opinions supported a twenty pound limit, the Court cannot say that this error was harmless.

Plaintiff raises another issue that makes the ALJ's reliance on Dr. Hasday's opinion unsupported.  Dr. Hasday imposed a preclusion from repetitive work "at or above shoulder level" with the right arm, yet the ALJ imposed a limitation to occasional reaching overhead.  The two terms are not the same, rendering the ALJ's statement that "Dr. Brovender's opinion is not inconsistent with the work restrictions assessed by Dr. Hasday," incorrect.  AR 1273.

As to Dr. Ainbinder, the ALJ rejected his opinion because he determined that "in light of the relatively benign objective findings cited . . .it appears he gave too much weight to the claimant's subjective complaints, which I have found to be only partially credible."  AR 1273.  Yet the ALJ's own description of Dr. Ainbinder's objective findings indicates that the objective signs were not necessarily "relatively benign."  AR 1273.  The ALJ listed objective findings of "reduced range of motion in the right shoulder with pain at terminal motion; subacromial tenderness in the right shoulder; positive impingement sign and positive empty can sign in the right shoulder; tenderness anteriorly in both knees; reduced range of motion in the right knee

with pain at terminal flexion over the medial joint line; reduced range of motion in the right ankle; paravertebral muscle spasms; and lumbosacral tenderness with pain at terminal range of motion." AR 1274.

Moreover, the ALJ's conclusion that "no other treating or examining physician endorsed specific functional limitations of this severity" is insufficient. Essentially, the ALJ adopted the opinion of nonexamining Medical Expert Dr. Brovender and examining physician Dr. Hasday over those of Dr. Ainbinder. Setting aside the errors with respect to the ALJ's treatment of Dr. Hasday's opinion discussed above, Dr. Hasday's objective findings were substantially similar to those of Dr. Ainbinder. Dr. Hasday found pain and decreased range of motion in the cervical and lumbar spine, shoulders, knees and ankles, positive impingement sign in the right shoulder and decreased sensation in the left knee. AR 1591-1622. "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'" *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007); *Murray*, 722 F.2d at 501-502.

The Court also notes that the District Court came to a similar conclusion in its order remanding the action. In questioning the ALJ's conclusion that Dr. Ainbinder's conclusions were inconsistent with the totality of the record, the Court explained:

> Indeed, there are medical records, including an orthopedic examination by Dr. Lawrence Meltzer on October 25, 2004 (*see* AR 913-23 [showing a reduced range of motion of the lumbar spine and tenderness in the right shoulder and marked pain with abduction and scapular fixation; reporting an impression of impingement syndrome of the right shoulder with a questionable rotator cuff tear, mild and chronic low back strain, a status post fracture right ankle recovered and a status post-surgery of the knee recovered; and stating *inter alia* that plaintiff could lift and carry 20 pounds occasionally and 10 pounds routinely and could not reach above the shoulder level with his right arm (and could only work at tabletop level)]) and a progress report by Dr. Lavi, D.O., an orthopedic surgeon, on September 28, 2006 (*see* AR 1158-1161 [reporting discomfort in the right shoulder, right knee and lumbar spine, with a diagnosis of internal derangement of the right knee, impingement syndrome with acromioclavicular arthrosis of the right shoulder, and lumbar discopathy/facet arthropathy, and reporting that plaintiff was permanently

partially disabled]) which appear to be consistent with Dr. Ainbinder's conclusions. *See* 20 C.F.R. § 416.927(b)-(d) (the weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record).

AR 1297-1298.

Having discredited the above reasons cited by the ALJ for rejecting Dr. Ainbinder's opinion, the ALJ is left with accepting Dr. Brovender's opinion over that of Dr. Ainbinder. This is insufficient. The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir.1984).

Accordingly, the ALJ's analysis of the medical opinions relating to Plaintiff's physical impairments was neither supported by substantial evidence nor free of legal error. The Court will discuss remand at the end of this opinion.

2.   *Plaintiff's Mental RFC*

In finding that Plaintiff could perform simple, unskilled tasks with minimal contact with others, the ALJ gave "great weight" to the opinions of the State Agency consultants. He did not give significant weight to the opinion of Plaintiff's treating physician, Dr. Lustig. AR 1274.

Initially, the Court notes that the ALJ applied his improper emphasis on the workers' compensation context within which Plaintiff's treatment was rendered to Dr. Lustig and Dr. Preston. For the same reasons discussed above, this was improper.

In rejecting Dr. Lustig's January 29, 2008, opinion that Plaintiff was 100 percent disabled and had moderate to extreme mental limitations, the ALJ focused on Dr. Lustig's inconsistent reports. The ALJ found that this opinion was inconsistent with his suggestion in June 2007 that although Plaintiff could not return to his prior work, he should begin retraining. AR 1274. Indeed, in June 2007, Dr. Lustig returned Plaintiff to temporary total disability status because his depression had worsened. He explained, however, that there was a "technical issue," because

although he did not believe that Plaintiff could return to his past work, he thought that Plaintiff needed "to get retrained in order to have a sense of future and hope." AR 1394. When Plaintiff returned in January 2008, Dr. Lustig noted that he had improved, but at a slower pace than Dr. Lustig would have liked. Despite his notation of improvement, however, he explained that Plaintiff's depression was worse. "His depression is worse, but his pain is better and he can handle this increase in pain with only a slight increase in depression." Dr. Lustig believed that he was temporarily totally disabled and that no work restrictions would allow him to work. AR 1387-1392.

Therefore, while the ALJ focused on Dr. Lustig's use of "improved" in the January 2008 treatment notes, a reading of the notes' details demonstrates that Plaintiff's depression had actually worsened. Rather than being inconsistent, the notes appear to reflect changes in Plaintiff's depression and symptoms. In May 2009, Dr. Lustig returned Plaintiff to permanent and stationary status and explained that Plaintiff had needed treatment to maintain himself and avoid hospitalization. AR 1383.

Dr. Preston's January 2009 report supports the worsening of Plaintiff's symptoms. Dr. Preston noted that since he last evaluated Plaintiff, his condition had worsened. He diagnosed anxiety disorder with panic attacks, as well as undifferentiated somatoform disorder. Dr. Preston explained that the somatoform disorder diagnosis was related to Plaintiff's physical symptoms of left facial numbness and hearing loss which were poorly explained.[5] Dr. Preston noted that Plaintiff did not appear to be intentionally producing these symptoms, and that he would need continued psychiatric treatment in part to help him cope with his persistent preoccupation with his somatic distress. Dr. Preston opined that unless Plaintiff's orthopedic and medical symptoms remit, it was not likely that he could return to productive employment. He imposed slight to

---

[5] The ALJ did not discuss Dr. Preston's findings in detail and did not address the somatoform disorder diagnosis. Although the January 2009 is outside of the date last insured, it is relevant to the discussion of Plaintiff's medical impairments

34

moderate limitations.  AR 1370-1374.

The ALJ also faulted Dr. Lustig for failing to explain why "he no longer recommended retraining for other work or how he concluded there were no work restrictions that would allow" Plaintiff to work "in the same report where he indicated" that Plaintiff had improved.  AR 1274. However, as noted above, Dr. Lustig's use of the term "improved" was relative.  Moreover, given Dr. Lustig's detailed and numerous treatment notes, including how and why Plaintiff's mental impairment had worsened, questioning his opinion on the basis of a failure to explain himself is not legitimate.

Accordingly, the ALJ failed to set forth specific and legitimate reasons for rejecting Dr. Lustig's opinion.  The opinions of the State Agency physicians, alone, are not substantial evidence upon which to reject his opinion.  *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.  The Court will discuss remand at the end of this opinion.

B.   Plaintiff's Subjective Complaints

Finally, Plaintiff argues that the ALJ improperly rejected his subjective complaints.

In *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'"  *Morgan*, 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834).  The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive."  *Id.*  Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing."  *Id.*

> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules.  *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the

statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings and therefore warranted remand).  Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment."  *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

The ALJ first noted that Plaintiff was "vague" as to his activities of daily living, but he certainly tried to portray an inactive, functionless lifestyle."  AR 1270.  There is no indication from the record, however, that Plaintiff was "vague" in his testimony or evaded questions from the ALJ.  When the ALJ asked Plaintiff about his activities, Plaintiff explained that he goes to the doctors a lot, and with physical therapy and his other appointments, he is at the doctors "quite a bit."  AR 1728.  He tries to walk to the mailbox with his wife, has gone grocery shopping once a month with his wife in 2008, but has not cooked or done housework or yardwork.  AR 1730.  He tried to do dishes and "help a little bit," but numbness in his fingers sometimes made him drop the dishes.  Plaintiff reads magazines but often falls asleep while doing so.  AR 1733.  Plaintiff does not engage in any activities for pleasure and has tried to go to church, but he was too tired.  AR 1734.  During the day, Plaintiff is usually in his bed or in his recliner, sitting or sleeping.  AR 1726-1727.

The ALJ also appears to suggest that certain activities indicate that Plaintiff is not as disabled as he claims.  The ALJ states that Plaintiff "acknowledged that in 2008 he was able to drive for 30 minutes before he had to stop and stretch," and "went grocery shopping about once a month with his wife. . ."  Certainly, these activities do not translate into an ability to complete an eight hour day, five days a week, nor do they suggest that Plaintiff is more functional than he alleges.  *Molina v. Astrue*, 674 F.3d 1104, 1112-1113 (9th Cir. 2012).

The ALJ next determined that Plaintiff's allegations were "diminished because those allegations are greater than expected in light of the objective evidence."  AR 1270.  Specifically,

the ALJ believes that the evidence since the 2007 hearing indicates that Plaintiff "continued to receive no more than routine conservative treatment for both his physical impairments and his mental impairment." AR 1270. This fails for two reasons. First, having determined that the other reason cited for discounting Plaintiff's testimony was in error, the ALJ cannot rely solely on a lack of objective evidence to discredit Plaintiff. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Second, the Court has explained above that the ALJ erred in his treatment of the medical opinions and improperly concluded that objective evidence did not support various opinions. Therefore, the ALJ cannot use this as a factor to properly reject Plaintiff's testimony.

Finally, the Commissioner cites various instances in the record where he contends that Plaintiff's credibility is questioned. The ALJ did not rely on such evidence, however, and the Court cannot on post hoc rationalization. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006).

Accordingly, the ALJ's credibility determination was not supported by substantial evidence and was not free of legal error.

C.    <u>Remand</u>

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded. Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate." *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has

been thoroughly developed.").

Here, the record has been thoroughly developed and no useful purpose would be served by remanding the action for further proceedings.  This action has been remanded once already and further proceedings did not remedy the prior deficiencies.  Considering Plaintiff's medical records subsequent to the 2007 hearing and decision, the Court finds that remand for the award of benefits is appropriate.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is not free of legal error.  The decision is therefore REVERSED and the case is REMANDED FOR THE AWARD OF BENEFITS.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Daniel J. Sullivan and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   __December 5, 2012__              _____ /s/ *Dennis L. Beck*
                                           UNITED STATES MAGISTRATE JUDGE